**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| CELGENE CORPORATION, | : | |
| NOVARTIS PHARMACEUTICALS | : | Civil Action No. 06-5818(SDW) |
| CORPORATION and NOVARTIS | : | |
| PHARMA AG, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ABRIKA PHARMACEUTICALS, INC. | : | **OPINION AND ORDER** |
| and | : | |
| ABRIKA PHARMACEUTICALS LLLP, | : | |
| | : | |
| | : | May 15, 2007 |
| Defendants. | : | |

---

**WIGENTON,** District Judge.

Before the Court are Defendants Abrika Pharmaceuticals, Inc. ("Abrika Inc.") and Abrika Pharmaceuticals,  LLLP's ("Abrika LLLP") (collectively "Defendants") Motion to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(2) and (3), or in the alternative, Transfer to the District of Delaware and Motion to Seal Documents and Plaintiff Celgene Corporation's Motion to Seal Documents.  Plaintiffs Novartis Pharmaceuticals Corporation and Novartis Pharma AG (collectively "Plaintiffs") have joined in Celgene Corporation's Opposition.  The Court, having considered the parties' submissions and having decided the motions without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons set forth below, denies Defendants's Motion to Dismiss or Transfer and denies the Motions to Seal Documents.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## I.    BACKGROUND

This is a lawsuit for patent infringement arising out of Abrika Inc.'s filing of an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA") seeking approval to commercially market a generic version of Novartis's RITALIN ® LA methylphenidate extended-release capsules prior to the expiration of two patents allegedly owned by Celgene Corporation that cover that product and its use.  Plaintiffs filed this lawsuit in the Federal District Court, District of New Jersey on December 4, 2006.  Two days later, on December 6, 2006 Plaintiffs filed a virtually identical action against the same defendants in the Federal District Court, District of Delaware.  Defendants have not contested venue or personal jurisdiction in the Delaware case and have filed responsive pleadings in that matter.

## II.    DISCUSSION

*Jurisdiction and Venue*

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may bring a motion challenging the court's right to exercise personal jurisdiction over them.  Once this is done, "plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction".  Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992), cert. denied 506 U.S. 817 (1992).  In doing so, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence".  Time Share Vacation Club v. Atlantic Resorts Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)(citation omitted).

Federal Rule of Civil Procedure 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits."

2

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)(citation omitted).  Personal jurisdiction over a non-resident defendant is proper where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted).  Thus, where a "corporation purposefully avails itself of the privilege of conducting activities within the forum State, . . . it has clear notice that it is subject to suit there . . ."  Id.  New Jersey's "long arm jurisdiction permits the assertion of *in personam* jurisdiction as far as is constitutionally permissible under the Fourteenth Amendment".  Eaton Corp. v. Maslym Holding Co., 929 F.Supp. 792, 796 (D.N.J. 1996) (citations omitted).

   To obtain personal jurisdiction, a moving party may assert either general or specific jurisdiction (or both).  General jurisdiction is established by demonstrating that the defendant has systematic and continuous contacts with the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984).  Specific jurisdiction exists when a non-resident defendant purposefully establishes minimum contacts with the forum state and is established where the litigation arises out of or relates to the defendant's forum contacts, provided that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Id. at 414 (citation omitted).  Accordingly, before this Court may adjudicate a patent infringement case such as that presented here, specific and/or general jurisdiction over Defendants must be found.

   The issue of personal jurisdiction in a patent case is governed by Federal Circuit law regarding due process.  Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003).  The exercise of personal jurisdiction must satisfy the requirements of due process.  To so

3

determine, a three step analysis must be applied:

> 1.   Did defendant purposefully direct his activities at the residents in the forum;
> 2.   Does the claim arise out of or relate to those activities; and
> 3.   Is the assertion of personal jurisdiction reasonable and fair.

Breckenridge Pharmaceuticals Inc. v. Metabolite Labs. Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006) (citing Akro Corp. v. Luker, 45 F.3d 1541, 1545- 46 (Fed.Cir. 1995)).

With respect to the third step, the burden is on defendant to show a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the factors set forth by the Supreme Court of the United States in Burger King. Id. at 1367.  These factors are to be considered in determining the fairness of asserting personal jurisdiction over a defendant and consist of:

> 1.   the burden on the defendant;
> 2.   the forum State's interest in adjudicating the dispute;
> 3.   the plaintiff's interest in obtaining convenient and effective relief;
> 4.   the interstate judicial system's interest in obtaining the most efficient; resolution of controversies; and
> 5.   shared interest of the several states in furthering fundamental substantive social policies.

Id.  In a patent case the crux of the due process inquiry should focus on whether defendant has had contact with the parties in the forum state beyond sending cease and desist letters or mere attempts to license the patent there.  Id. at 1366.

With respect to specific jurisdiction, on October 23, 2006 Abrika Inc. notified Celgene, by way of a notification letter, of the ANDA application – as it is required to do pursuant to 21 U.S.C. §355(j)(2)(B)(i),(iii); 21 C.F.R..314.95(b),(d).  The filing of the ANDA triggers a statutory right to sue for patent infringement.  However, this alone does not appear to constitute

grounds for finding specific jurisdiction as Defendants have taken no step that would constitute infringement such as manufacturing or selling the drug at issue in this state.  See Abbott Labs. v. Mylan Pharmaceuticals Inc., 2006 U.S.Dist. Lexis 13782.  Abrika Inc. did not perform the development and formulation work in support of the ANDA in New Jersey; the sample of its ANDA product was not manufactured in New Jersey; the clinical studies were not performed in New Jersey; and Abrika Inc.'s personnel and agents did not prepare the ANDA in New Jersey.[1]

Nevertheless, while Defendants have no physical presence in New Jersey and the ANDA was not filed or prepared in New Jersey, Defendants's activities within New Jersey constitute continuous and systematic contacts sufficient to warrant general jurisdiction.[2]  While the ANDA has not yet been approved, and there has been no technical sale of the product in New Jersey, Defendants have entered into contracts with the State of New Jersey.  They have also sold drugs and purchased ingredients for their products from companies located in New Jersey.  The Defendants' New Jersey related activities include:

1.      In 2006, Abrika Inc. transacted business in approximately 38 states.  New Jersey amounted to approximately 8.4% of their annual sales, totaling $919,106 — which was the third highest source of sales for Abrika Inc. in 2006.  (Exhibits 7 &

---

[1]  This Court will not further discuss the issue of specific jurisdiction since general jurisdiction exists in this matter.

[2]  Defendants contend Abrika LLLP and Abrika Inc. are two distinct entities and that this case should be dismissed as to Abrika LLLP because it ceased conducting business in New Jersey prior to this action and on April 1, 2006, Abrika LLLP transferred all its assets and liabilities to Abrika Inc.  However, pursuant to New Jersey law, a corporation is imputed with its predecessor's contacts of personal jurisdiction if certain factors are established.  Portfolio Fin. Servicing Co. v. Sharemax.com, Inc., 334 F.Supp.2d 620, 625 (D.N.J. 2004)(citation omitted). The first three of these factors exist here.  (See Savit Decl. at Ex. 3.)

8 to Savit Decl.)

2.      Abrika Inc. entered into two contracts with the State of New Jersey: the August

15, 2003 PAAD Drug Rebate Agreement with the Commissioner of the New

Jersey Department of Health and Senior Services whereby Abrika Inc. "a drug

manufacturer" was required to enter into and have in effect a Rebate Agreement

with the State of New Jersey in order for its drugs to be eligible for state funding

when dispersed to NJ PAAD[3] beneficiaries (id. at Ex. 23A) and the May 1, 2004

Senior Gold Prescription Discount Program Rebate Agreement (Ex. 24) .  Both

these agreements are effective until June 30, 2007 (Exs. 23B & 25) and both

provide for resolution of disputes under New Jersey law, specifically N.J.S.A.

52:14B- 1 et seq.   (Id. at Exs. 23A & 24.)

3.      Abrika Inc. also entered into at least three other contracts with the state of New

Jersey: WFNJ/GA Drug Rebate Program, N.J. Medicaid Drug Rebate Program

and NJ AIDS Drug Distribution Program.

4.      Abrika Inc. also purchased goods from companies located in New Jersey.  On

January 2, 2003 Defendant entered into a five-year Supply Agreement with Sage

Chemical Inc. for ingredients to be used in Abrika's products.  (Id. at Ex. 27.)

Abrika Inc. also entered into a June 1, 2003 Supply Agreement with ISP

Technologies.  (Id. at Ex. 30.)

5.      Abrika LLLP entered into a June 25, 2004 Sales and Marketing Agreement with

_____

[3]  The New Jersey program provides drugs and related products to 200,000 low income
aged residents.

BiCoastal Pharmaceuticals, a New Jersey corporation (Id. at Ex. 31) and a June 25, 2004 agreement with Well Spring Pharmaceutical Corp. (Id. at Ex. 32).

6.    Abrika LLLP contracted with Lawrence T. Freidhoff, who resides in New Jersey, to act inter alia, as an advisor to its CEO.  Mr. Freidhoff was paid $4,000 daily for his services. (Id. at Ex. 27)

7.    From 2003 until the present, Abrika has made approximately $9 million in purchases from New Jersey companies. (Id. at Ex. 41 & 42, Pl.'s Br. at 24.)

The matter presented to this Court does not involve merely one or two examples of Defendants contacts within New Jersey.  The instant case presents systematic and continuous contacts with New Jersey to an extent that warrants a finding of general jurisdiction from at least 2003 to the present.  As instructed by the court in Akro, supra, the assertion of jurisdiction must be reasonable and fair.  Here, both Abrika Inc. and Abrika LLLP have entered into contracts with the state of New Jersey and companies/individuals in New Jersey.  They have also sold and purchased products to and from New Jersey companies and their continued obligation to do is noteworthy.  They have certainly availed themselves of the benefits of conducting business here and can not now feign surprise by being sued here by Plaintiffs.  Further, Defendants have failed to provide a compelling case that exercising jurisdiction over it would offend principles of fair play and substantial justice.  Under Burger King, supra, Defendants have not demonstrated an unreasonable burden from litigating this case in New Jersey.  New Jersey has an interest in protecting its citizens from patent infringement, and Plaintiffs certainly have an interest in obtaining relief for patent infringement.  Neither the interstate judicial system nor the shared interest of the states will be affected by assertion of jurisdiction in this case, because all states are

governed by the same body of patent law.

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of a complaint for improper venue.  In a patent infringement action, proper venue is defined in 28 U.S.C.§§ 1400(b) and 1391(c). Venue is proper where the defendant resides, or where it has committed acts of infringement and has a regular and established place of business.  28 U.S.C. § 1400(b).  When defendant is a corporation, it is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1391©.  Here, there is personal jurisdiction and venue is therefore proper.

*Transfer*

In the alternative, Defendants contend that the case should be transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a).  A district court may transfer a case "[f]or the convenience of the parties and witnesses, in the interest of justice," provided that the case is transferred to "any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  It is not disputed that this case could have been brought in Delaware, as there is a pending action there currently and jurisdiction and venue are uncontested.

"The burden of establishing the need for transfer . . . rests with the movant."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citing Shuttle v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970)).  When deciding motions to transfer, the "plaintiff's choice of venue should not be lightly disturbed," and "the balance must tip strongly in favor of transfer before disturbing the plaintiff's choice."  Market Transition Facility of New Jersey v. Twena, 941 F.Supp. 462, 467 (D.N.J. 1996) (citing Hardaway Constructors, Inc. v. Conesco Industries, Ltd., 583 F.Supp. 617 (D.N.J. 1983)).

The Third Circuit has held that there are both public and private factors to be considered in deciding motions to transfer. Id. at 879-880. The private factors to be considered weigh against transfer. Plaintiffs choice of forum is to be given considerable weight in deciding a motion to transfer, and Plaintiffs choice will prevail "unless the party moving for the transfer can convince the court that its alternative forum is not only adequate, but *more convenient than the present forum*." Market Transition, 941 F.Supp. at 467 (citing Hudson United Bank v. Chase Manhattan Bank, 832 F.Supp. 881, 888 (D.N.J. 1993)) (emphasis added). Defendants argue that Plaintiffs' choice of forum should be given little, if any, weight in the 1404(a) balancing test due to the fact that Plaintiffs also filed suit in Delaware. However, Plaintiffs had legitimate reasons to file a similar, even identical action in Delaware, in order to ensure that they would not be time-barred from bringing the action at all should this Court find that it did not have personal jurisdiction over Defendants. Defendants' suggestion that Plaintiffs do not actually have a preference is therefore inaccurate. In addition, Plaintiffs filed in New Jersey first, and did not even serve process on Defendants in Delaware, indicating a clear preference that the case move forward in New Jersey.

Other private factors weigh in Plaintiffs' favor also. Given the proximity of this Court and the District of Delaware court,[4] there is no reason to believe that transferring the case would be more convenient for the parties or the witnesses, or that transfer would provide easier access to evidence. Although Defendant's choice of forum is to be given some weight in considering a motion to transfer, here Defendants do not even contend that it is more convenient for the case to

---

[4]It is approximately 110 miles from the District of New Jersey courthouse to the District of Delaware courthouse.

be in Delaware.  Defendants only claim that the case should be in Delaware because that is where

they are "incorporated and [have] already submitted to the jurisdiction of the Court."  (Def. Br.

14.)  Neither of these issues are factors to be considered in a 1404(a) motion to transfer.

It is unnecessary for the Court to address in detail the public interest factors because, as

conceded by Defendants, "there is no appreciable difference between this Court and the

Delaware Court regarding many public interest factors."  (Def. Br. 14.)  And while Defendants

do suggest that there is a public interest in preventing duplicate litigation (Def. Br. 12), and this

Court agrees, the cases cited by Defendants predominantly involve the transfer of second filed

actions.  Here, the first filed action was in New Jersey.  The determination of whether the case

should go forward in Delaware or New Jersey is to be made in the framework of a 1404(a)

motion to transfer.  Because Defendants have not met their burden of showing that transferring

the case to Delaware would be more convenient, the motion to transfer is denied.

*Motion to Seal Documents*

Pursuant to Local Civil Rule 5.3(c)(2), any motion to seal documents filed with the Court

must include: (a) the nature of the materials or proceedings at issue, (b) the legitimate private or

public interests which warrant the relief sought, © the clearly defined and serious injury that

would result if the relief sought is not granted, and (d) why a less restrictive alternative to the

relief sought is not available.  The motions to seal filed by both parties have not satisfied the

requirements of Local Civil Rule 5.3(c)(2).  Neither motion provides legitimate public or private

reasons for the documents to be kept from the public, and neither motion sufficiently identifies a

clearly defined and serious injury that would result if the motion is not granted, nor do the

motions  adequately explain why a less restrictive alternative is unavailable.[5]  Because both parties have failed to satisfy the requirements of Rule 5.3(c)(2), the motions to seal are denied. Both parties will have 20 days to renew their motions and comply with the requirements of the rule.  The documents mentioned in the motions will remain temporarily under seal, and if the parties do not renew their motions within 20 days, the documents will be unsealed.

## CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss, or in the Alternative Transfer to the District of Delaware, is Denied and the Motions to Seal Documents are denied, subject to the right of the parties to re-file in compliance with New Jersey Local Rule 5.3(c)(2) within 20 days.

**SO ORDERED**.

s/Susan D. Wigenton, U.S.D.J.

---

[5]Both parties only state that there was an agreement to file the documents under seal, and that they are "aware of no less restrictive alternative available."

11